[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Jane Jenkins, appeals from the December 6, 2000 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of appellant's daughter Jane Jenkins (born 7/3/86) and appellant's son Shawn Looker (born 3/31/90) to Franklin County Children Services ("FCCS"), and granting a motion for Planned Permanent Living Arrangement as to appellant's son James Jenkins (born 3/13/85). For the reasons that follow, we affirm the juvenile court.
On February 18, 1998, FCCS filed a complaint alleging that James Jenkins, Jane Jenkins, and Shawn Looker were neglected and dependent minors. The complaint alleged that they were not able to return to the care of their mother, appellant herein, and that the mother had not engaged in counseling. The complaint also stated that FCCS had temporary custody which would soon expire under operation of law.
On April 22, 1998, the trial court found James, Jane, and Shawn to be dependent and neglected minors, ordered temporary custody to FCCS, and set an annual review for February 18, 1999. On September 8, 1999, FCCS filed a motion, pursuant to R.C. 2151.413, for permanent custody of the three children. A magistrate heard the case on May 23, 2000, May 24, 2000, June 1, 2000, June 13, 2000, and June 14, 2000. On the fourth day of trial, appellant was served with a motion for Planned Permanent Living Arrangement ("PPLA") pursuant to R.C. 2151.353 with respect to James Jenkins. The trial proceeded as a PPLA case with respect to James and a permanent commitment case with respect to Jane and Shawn.
On June 23, 2000, the magistrate issued findings of fact, conclusions of law and judgment entries with respect to each of the three children. The following is taken from the magistrate's decision with respect to James:
 James Jenkins is 15 years old. He has been removed from home since August of 1995, when he was placed at Hannah Neil * * *. James has remained in placement continuously since then. James went into foster care through Hannah Neil in October of 1995. In April of 1996, James was placed at Hannah Neil again, before going to the Snedecker foster home. This treatment foster care placement remained in effect until early 2000, when James was moved into mental health hospitalization at Richland Hospital. When James' behavior became too extreme for Richland Hospital, he was moved to an O.Y.A.P. group home. James soon was moved on to Oak Ridge, where he remains in residential placement.
 James needs regular medication through a psychiatrist and he needs counseling. James has behavioral problems that are extreme, particularly with aggression and anger management. James has had numerous delinquency related charges over the years. In foster care, James has stolen items from the home, including food, lighters, razors and female underclothing. James was removed from Richland Hospital when he was involved in attempting to incite a riot. James has psychosis and has a conduct disorder.
 James can possibly get back into a treatment foster care setting if he can get his aggression under control.
 James does share a bond with his mother. James does seek to visit with his mother. Even after March of 1999, when Janie and Shawn stopped visiting with Ms. Jenkins, James has continued to see his mother. Home visits were ended when James and Ms. Jenkins got into a physical disagreement, as James was unruly and was restrained by mother as James attempted to run out of mother's home. This occurred in April of 1999.
 Since then, James has visited with Ms. Jenkins, off and on, sometimes at mother's house. The recent Richland Hospital placement, O.Y.A.P. placement, and Oak Ridge placement have not been conducive to visitations. James and mother do speak over the phone, and a visit is scheduled very soon as the trial progresses.
 Currently, James can't function in a family-like setting. At his best, he needs treatment foster care. He is fascinated with weaponry, fire-setting and women's underclothing. He is a troubled youth. He vacillates in his opinion of whether he seeks to go back with his mother or not.
 James has suffered sexual abuse in the past, and issues from that abuse continue to haunt James.
With respect to Jane, the magistrate found:
 Jane Jenkins (aka "Janie") is 13 years old. Janie was removed from relatives in August of 1995, when she was placed with Ms. Jenkins. Janie remained with her mother until June of 1996, when removal was done as a result of mother attempting to kill herself with an overdose of medication. This wasn't the first time that mother needed respite help, with a couple of previous respite placements also being attributed to Ms. Jenkins being overwhelmed.
 During the period of time when Janie was in the home with mother in 1995 and 1996, Franklin County Children Services held Court Ordered Protective Supervision. Two separate in-home service providers were involved, simultaneously, in order to work intensively with Ms. Jenkins on managing the home and the children. In-home counseling was provided to address conflict problems in the home between mother and children. Ms. Jenkins needed help to address medical care of the children and school attendance concerns of the children. Ms. Jenkins also was being monitored for her medication, as she had been prone to not taking her prescription medications before.
 Since June 14, 1996, Janie has remained in foster care with Ms. Greenwood. Janie has been in counseling for four years now, addressing victimization issues (sexual and physical), emotional problems and post-traumatic stress. Family counseling between Janie and her mother is needed, but Janie refuses to do anything with her mother. Janie has refused to visit since March of 1999. Before March of 1999, Janie sporadically visited in 1998.
 Janie does not feel safe around her mother. Her mother did not believe Janie's claims of abuse when Janie lived with mother. Janie is fearful of mother's boyfriend, also. Janie does not evidence a bond with Ms. Jenkins. She refuses all forms of contact with her mother. They've not seen each other in 14 months.
 When Janie agreed to visit at previous times, it was explicitly for the purpose of seeing her baby sister, Tina. When Tina wasn't at the visits, Janie lost her reason to go.
 Janie has some behavioral problems, although not to James' degree. She lies and steals and had been suspended at times from school for fighting. She has suffered sexual abuse in the past and has suffered physical abuse as well.
With respect to Shawn, the magistrate found:
 Shawn Looker is 10 years old. Shawn was removed along with Janie in August of 1995. He has been in placement with Ms. Greenwood for the same period of time as Janie.
 Shawn is developmentally handicapped. He functions as a five or six year old in many ways. His speech is substantially delayed. Soon before arriving at Ms. Greenwood's home, Shawn had an operation that allowed him to hear. Upon arrival at Ms. Greenwood's home, Shawn's speech was not comprehensible. Now, Shawn can communicate verbally although he is unable to read or write. He is now recognizing letters. His memory is good.
 Shawn does extremely well at school. He receives awards consistently for good behaviors and academic progress. He is physically capable and is active with Scouts, dance and Special Olympics.
 The biggest behavioral problems of Shawn centered around his resistance to visiting with his mother. He was so opposed to it that he would go into a tirade at the time of being transported to visits. Shawn would kick and scream while being dragged or carried to the vehicle. He would escape if he could, running to lock himself in the bathroom. Ms. Greenwood transported for some visitations when Shawn refused to go with Franklin County Children Services' transport personnel. When Ms. Greenwood's involvement didn't bring success, visits have been impossible to bring about.
 When visits did occur between Shawn and his mother, there were times when Shawn would have adverse physical reactions afterward. Shawn has become physically ill often during visits with his mother. Shawn's resistance to visitation is so extreme that Ms. Brugler, his therapist of one and a half years, testified she has never seen a child so opposed to visitation in her 24 years of work.
With respect to appellant, the magistrate found:
 Ms. Jenkins has a total of five children. None of them reside with her. A two and a half year old child, Tina Dayton, is in foster care. An older child, Brittany, is in the care of that child's father. Ms. Jenkins does not know where Brittany and the father are living.
 The last time Ms. Jenkins had custody or placement of Shawn or Jane was when she received them in August of 1995. Franklin County Children Services held Court Ordered Protective Supervision at that time and they placed intensive services into the home. Two separate home base service teams were involved simultaneously in order to provide the level of supervision required. Ms. Jenkins had problems in seeing to the medical needs of her children. School attendance of the children was a problem when they lived with Ms. Jenkins. Ms. Jenkins was sporadic in taking her own medication.
 Placement with Ms. Jenkins ended in June of 1996 when Ms. Jenkins attempted suicide. The stress of child rearing and the stress of family problems involving abusive men were too much for Ms. Jenkins.
 Jane Jenkins is the mother of James, Shawn and Janie. She is not capable of properly tending to the children. Ms. Jenkins has the mental functioning of an eight-year-old. She lacks the capacity to successfully parent her children. Ms. Jenkins lacks parenting skills and she lacks the ability to adequately learn parenting skills.
 Ms. Jenkins is not bonded with her children. Given her lack of parenting skills and given the special needs nature of her children, Ms. Jenkins cannot and should not have any of her children either now or within a reasonable time. Her mental retardation is so severe as to make her unable to provide a home either now or within one year, (Section 2151.414(E)(2) of the Ohio Revised Code).
 Despite reasonable case planning and diligent efforts by Franklin County Children Services to remedy the problems leading to the removal of the children, Ms. Jenkins has failed to remedy the conditions, which caused removal. Ms. Jenkins' mental health has not improved. She needs to take medication for her mental health problems, but she often chooses to be off of her medication. For most of 1999, Ms. Jenkins was not on her medication.
 Ms. Jenkins is not involved in counseling, despite the case plan requiring this. Her depression continues to go unaddressed as a result. Ms. Jenkins hasn't attended family counseling in over one year, which severely damages her chances to create a bond with her children. James and Shawn themselves refuse to meet with their mother in counseling because of the amount of conflict they have with Ms. Jenkins when counseling is attended.
The magistrate concluded:
 Section 2151.414(E)(1) of the Ohio Revised Code has been shown by clear and convincing evidence.
 Section 2151.414(E)(4) of the Ohio Revised Code has been proven given the lack of visitation between mother and these children. Even regarding James, who does have sporadic contact with mother, visitation is not regular at all. Ms. Jenkins does not take advantage of the ability to be involved with counseling appointments with her children.
 Section 2151.414(E)(10) of the Ohio Revised Code has been proven as relates to the fathers. Mr. Jenkins has abandoned his children, having had no contact for years. Mr. Looker has abandoned Shawn, having not seen his child for years as well.
 Permanent Court Custody is ordered regarding Shawn and Janie. This is in their best interests. They have absolutely no relationship with their mother, not seeking to see her for over a year. They have no relationship with a father, or with any other birth relative. They are placed together in a home where they quite possibly could be adopted. These children do not meet the criteria for Planned Permanent Living Arrangement, and they need permanence, which only can be achieved by adoption. They have lived with their mother for very little time in their lives.
 Regarding James, Planned Permanent Living Arrangement is ordered. He cannot function in a family like setting and he remains in residential placement. His mother has significant mental health problems. James does visit with his mother, although sporadically. He does retain a relationship with her. Adoption isn't in James' best interest because he stands little chance of being adopted. While James is not yet 16 years old, he does oppose adoption, which presents another reason to see Permanent Court Custody as not productive.
 The Magistrate finds by clear and convincing evidence that a planned permanent living arrangement is in the best interest of the minor child and the parents have sufficient physical, medical or psychological problems and are unable to care for the child because of those problems. Adoption is not in the best interest of the child as the child does maintain a significant and positive relationship with the parents or relative; and has been counseled on permanent placement options available to him and is unwilling to accept or unable to adapt to placement and is in an agency program preparing him for independent living.
 Continuation in the child's own home would be contrary to the child's welfare and that reasonable efforts have been made to prevent or eliminate the need for removal of said child from the child's own home.
 Placement and casework services were provided by the agency to the family of the child, but the removal of the child from home continues to be necessary because the circumstances giving rise to the original filing have not been sufficiently alleviated.
Appellant filed objections to the magistrate's decision on July 5, 2000, and on October 23, 2000, filed a supplemental memorandum. On December 5, 2000, the trial court issued its decision overruling the objections, and the judgment entry was journalized on December 6, 2000, adopting the magistrate's decision.
This appeal followed, with appellant assigning as error the following:
FIRST ASSIGNMENT OF ERROR:
 The trial court erred in adopting the Magistrate's Decision finding that Janie Jenkins and Shawn Looker should be permanently committed to Franklin County Children's Services, because such ruling was not supported by clear and convincing evidence.
SECOND ASSIGNMENT OF ERROR:
 The trial court erred in adopting the magistrate's decision ordering a Planned Permanent Living Arrangement (hereinafter PPLA) for James Jenkins.
THIRD ASSIGNMENT OF ERROR:
 The trial court erred in finding James Jenkins, Janie Jenkins and Shawn Looker to be dependent minors under O.R.C. 2151.048 and neglected minors O.R.C. Section 2151.03(A).
FOURTH ASSIGNMENT OF ERROR
 The trial court erred to the prejudice of Jane Jenkins by admitting child hearsay testimony by Mr. Eric Johnson, Ms. Opal Greenwood and Ms. Barbara Brugler, in violation of O.R.C. Section 2151.35(F) and In Re Brofford, 83 Ohio App.3d 869. (C.A. 10, 1992).
FIFTH ASSIGNMENT OF ERROR:
 The trial court erred to the prejudice of Jane Jenkins by admitting opinion testimony from Mr. Eric Johnson and Ms. Opal Greenwood, by admitting the FCCS amended case plan, FCCS Exhibit 1, and by admitting additional testimony from witnesses which was not based upon firsthand knowledge and was speculative.
SIXTH ASSIGNMENT OF ERROR:
 The trial court erred to the prejudice of Jane Jenkins by admitting the expert report of Dr. Grady K. Baccus, Psychologist, and by admitting opinion testimony of Dr. Baccus, that Ms. Jenkins intellectual functioning was equivalent to 8.0 years, that her personality disorder would significantly limit her ability to provide adequate nurturing and protection for her children, that her ability to provide consistent, adequate parenting was limited, and that she was not significantly bonded with her children, because these opinions were without proper foundation and were based, in whole or in part, upon facts not properly in evidence.
In her first assignment of error, appellant challenges the weight of the evidence supporting the trial court's conclusion granting permanent custody of Jane and Shawn to FCCS. Under R.C. 2151.414(B), a court may grant permanent custody of a child who is neither abandoned nor orphaned to a public children services agency only if the court finds by clear and convincing evidence that: (1) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; and (2) it is in the best interest of the child to grant permanent custody of the child to the agency. Appellant contends that there was a lack of clear and convincing evidence to support such a finding. We disagree.
Permanent custody judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. In re Brofford (1992), 83 Ohio App.3d 869, 876-877. Further, the findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. In re Brofford, supra, at 876; In re Brown (1994),98 Ohio App.3d 337, 342.
In deciding whether a child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must consider all relevant evidence and determine by clear and convincing evidence whether one or more of sixteen enumerated factors exist as to each of the child's parents. R.C. 2151.414(E); see In re William S. (1996), 75 Ohio St.3d 95, 99. If one or more factors exist, the court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re William S., supra, at 99.
Here, the trial court found that the factor specifically enumerated in R.C. 2151.414(E)(1) applied and, thus, mandated a finding that Jane and Shawn could not be placed with appellant within a reasonable time or should not be placed with appellant. R.C. 2151.414(E)(1) provides:
 Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Appellant contends that, in finding that she had failed to remedy the conditions causing Jane and Shawn to be placed outside their home, the trial court ignored the evidence that she had expressed no suicidal ideations since her lone suicide attempt in 1996, and there was no evidence that she actually needed medication to prevent suicidal ideations. Appellant further argues that FCCS did not diligently assist her in her efforts toward reunification. Instead, appellant argues she was given the "runaround" when she tried to find out how her children were doing in counseling, and she was without a case manager for many months which made it difficult for her to get to the doctor.
FCCS counters that appellant failed to meet the goals of the case plan in that she failed to consistently engage in individual counseling, was unable to engage in family counseling due to the desires of her children, and most importantly, failed to bond with her children, particularly Jane and Shawn. FCCS also argues that appellant's emotional illness and low I.Q. make her unable to understand and provide for her children's needs. The guardian ad litem agrees, adding that the children's emotional and behavioral issues coupled with the chronic mental health issues and limitations of appellant and her inability to remedy the problems that caused the children to be placed outside the home, justify the trial court's finding
The evidence supports the trial court's conclusion that a permanent commitment is in the best interest of Shawn and Jane. As the trial court stated:
 * * * The evidence reveals that all three children are difficult to care for, as Janie was diagnosed with depression and is a sexual abuse victim, Shawn has moderate mental retardation and developmental delays, and James has been diagnosed with psychosis and conduct disorder. * * * In addition, all three children have certain needs that need to be addressed and because of Ms. Jenkins's mental condition and psychological disorder she cannot consistently put her children's needs before her own. * * * (Decision of Dec. 5, 2000, at 9.)
Thus, although there was evidence that appellant is not currently suicidal and that she has completed parenting classes, she has not been able to develop a bond with Jane and Shawn, she has neglected to address her mental health concerns with individual counseling, she neglected to continue her medication, and she did not enroll in the more extensive twelve-week parenting program recommended by the caseworker.
In addition, appellant has been unable to successfully complete the case plan pertaining to family counseling because Janie and Shawn adamantly refused to attend counseling. Although appellant testified that the children's therapists would not give her any information about their progress, there was also testimony in the record that Shawn's therapist invited appellant to meet with her for several counseling sessions, but appellant cancelled and gave conflicting stories for why she had cancelled. The trial court found that although appellant "has expressed her love and desire to care for her children, that may not necessarily be enough." (Decision of Dec. 5, 2000, at 9.) We similarly find that there is competent and credible evidence supporting the trial court's determination that it was in Jane and Shawn's best interest to grant permanent custody to FCCS, and that appellant failed for a number of years after the children's removal from the home to remedy the conditions that prompted removal. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal (1994),95 Ohio App.3d 309, 316.
Accordingly, the first assignment of error is not well-taken and is overruled.
In her second assignment of error, appellant contends that the trial court erred in ordering a PPLA for James. An abused, neglected or dependent child may be placed in a PPLA with a public children services agency or private child placing agency if the court finds by clear and convincing evidence that such arrangement is in the best interest of the child, and if one of the factors listed under R.C. 2151.353(A)(5) exists. See R.C. 2151.353(A)(5). Of relevance to the instant case is R.C. 2151.353(A)(5)(b), which provides for a PPLA when:
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative[.]
Appellant argues that the trial court's ruling was not supported by clear and convincing evidence. Appellant contends that the diagnosis of mental problems in Dr. Baccus' report is vague, and there is no correlation between his diagnosis of "mild mental retardation" and "personality disorder not otherwise specified (narcissistic and paranoid traits)" and appellant's ability to parent.
The record reflects a history of chronic mental health and emotional issues on the part of appellant. Appellant has limited parenting skills and difficulty relating to her children. She has a poor understanding of the problems James has regarding his emotional issues. Appellant is in the mildly retarded range of intellectual functioning. In the past, intensive services in the home did not assist appellant in being able to care for her children. In sum, the same facts that support PCC for Shawn and Jane support a finding of PPLA for James.
Appellant also argues that service of the motion for PPLA was improper; however, appellant did not object to the trial court. Thus, the issue is waived for purposes of appeal. The second assignment of error is not well-taken and is overruled.
In her third assignment of error, appellant argues the trial court erred in finding the children to be dependent minors under R.C. 2151.04(C) and neglected minors under R.C. 2151.03(A). Appellant argues that she did everything she was asked to do by FCCS, and insurmountable hurdles were erected by FCCS in failing to investigate and address why the children refused to see her.
R.C. 2151.414(A) provides, in part, that "[t]he adjudication that the child is an abused, neglected, or dependent child and the grant of temporary custody to the agency * * * shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody." In the case of In the Matter of: Thelma Moody (Aug. 7, 2000), Athens App. No. 99CA62, unreported, the Athens County Court of Appeals stated: "We read this section as an attempt to emphasize that the permanent custody hearing should focus on whether the agency should receive permanent custody and to emphasize that the outcome of the permanent custody hearing has no effect on the child's status as an abused, neglected or dependent child." In the instant case, the children were adjudicated neglected and dependent on May 11, 1998. Thus, to the extent appellant is appealing the 1998 determination that the children were dependent and neglected minors, the time for appeal from that judgment has long since run.
In addition, the focus of the hearing before the magistrate was on whether "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home." R.C. 2151.414(E)(1). As discussed in connection with assignments of error one and two, despite diligent efforts by FCCS, there was ample, credible, competent evidence that appellant did not comply with the case plan and failed to remedy the conditions that caused her children to be removed. While it is true that some of appellant's efforts to engage in counseling and visitation with her children were thwarted by the children's adamant refusal to attend, the record also contains evidence that appellant did not avail herself of opportunities to work with mental health professionals. The third assignment of error is without merit.
In her fourth assignment of error, appellant contends that it was error for the trial court to admit numerous hearsay statements of the children. Appellant has identified the following five specific responses in the transcript that she alleges were inadmissible hearsay:
 1. In response to a question about why a particular provision was in the case plan, caseworker Eric Johnson testified that: "The kids would talk about not feeling safe." [May 23, 2000 Tr. at 43];
 2. In response to a question about why Jane and Shawn did not want to attend family counseling, Eric Johnson responded: "During some of the sessions that they did attend, there was verbal conflict between mom and James." [May 23, 2000 Tr. at 47];
 3. In response to a question on cross-examination as to why Jane did not feel safe in her mother's home, Johnson responded: "Well, Janie has also indicated that she's felt not safe in the home due to mother and her boyfriend arguing and getting into domestic violence situations." [May 24, 2000 Tr. at 22];
 4. In response to a question about whether Shawn wants to return to his mother's home, foster mother Edith Opal Greenwood testified: "From what he's telling the therapist and from what he tells me, no he does not wanna return." [May 24, 2000 Tr. at 65];
 5. In response to a question about whether Shawn refused to visit his mother in family sessions, therapist Barbara Brugler testified: "He would tell me he did not want to visit." [June 1, 2000 Tr. at 10.]
Appellant argues that child hearsay testimony must comply with R.C.2151.35(F) to be admissible in a case regarding abused, neglected or dependent children, and that admission of these statements without compliance with the statute constitutes prejudicial error.
We overrule this assignment of error for several reasons. Counsel did not object to the first and third instances, and hence has waived all but plain error. The second instance is not a statement. To the extent the first, third, fourth, and fifth instances are specific statements, they fall within an exception to the hearsay rule for a statement of the declarant's then-existing state of mind either mental, physical, or emotional. Evid.R. 803(3). In addition, R.C. 2151.35(F) has been declared inconsistent with Article VIII of the Ohio Rules of Evidence and of no force or effect. In re Coy (1993), 67 Ohio St.3d 215, paragraph one of the syllabus. The fourth assignment of error is not well-taken and is overruled.
In her fifth assignment of error, appellant argues the admission of certain lay opinion testimony and the admission of the amended case plan amounted to prejudicial error.
With respect to the amended case plan, appellant argues it contained hearsay and vague unsubstantiated conclusions regarding victimization issues, James' physical and verbal aggression, medical diagnoses, and a reference to appellant's need to utilize counseling to eliminate suicidal ideations. However, appellant failed to raise any of these objections at trial and, in fact, the amended case plan was admitted without objection. (June 23, 2000 Tr. at 47.) The failure to object, waived error in the admission of that evidence unless that error rose to the level of plain error. In re: Honaker (May 10, 2001), Franklin App. No. 00AP-1269, unreported. Moreover, the amended case plan was filed with the clerk of court on May 11, 1998, and is part of the official record of the case.
Appellant also argues that the trial court should not have allowed caseworker Eric Johnson to testify that Shawn and Jane were not bonded with appellant. The magistrate overruled the objection on the basis that, under Evid.R. 701, Mr. Johnson could render his opinion based on his observations and experience. We find no error in the admission of this testimony. Lay opinion testimony is admissible if both criteria set forth in Evid.R. 701 are satisfied. Skeen v. Gullett (June 23, 1994), Franklin App. No. 93APF12-1633, unreported. Evid.R. 701 provides that:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
Here, Mr. Johnson had been employed for eleven years with FCCS as a caseworker and had worked with appellant's family for five years. Upon review of the record, we conclude that the caseworker's opinion was rationally based on his perception and experience and that it was directly relevant to the issues at hand. His testimony was, therefore, properly admitted. Moreover, other evidence in the record clearly established the lack of bonding between appellant, Shawn and Jane.
Appellant also argues that it was error to admit the testimony of Opal Greenwood, the foster mother, who testified that Jane had bonded to her. When asked to describe her relationship with Jane, Ms. Greenwood testified:
 A. Honestly, at her age and the way we're — well, I've known her for four years now, it's — like a mother/daughter relationship. I — mean that's the best way I can put it. I don't have another daughter that I can compare it too, but it's pretty well like that. She's ve — she hates me from time to time like any teenager does because I do set down rules. But most of the time — you know, she's very — she's very affectionate which was a long time for her to do. She's only been affectionate probably within — about the last two years. It was really hard for her at first to bond with me, but she has. I feel that she has.
Q. Why — why do you feel that she is —
 A. Because I can tell we have a connection. Be — before then there — it was very hard to relate with her on most things, but the therapist and I have talked and the ther — therapist feels also that she is now bonded with me. She's — she was — she was very hard to bond because she was such a — I didn't get her until she was nine. [May 24, 2000 Tr. at 50-51.]
Appellant did not object to any of this testimony at trial and, as such, has waived all but plain error. In re: Honaker, supra. Moreover, Ms. Greenwood had first-hand knowledge of the children and their reactions to her over time. As such, her testimony is properly admitted based on her own observations. The fifth assignment of error is not well-taken and is overruled.
In her sixth assignment of error, appellant argues the trial court erred in admitting the psychological evaluation of appellant completed by Dr. Grady K. Baccus, and in allowing certain opinion evidence of Dr. Baccus concerning her level of intellectual functioning, her personality disorder, and the level of bonding she had with her children. Appellant contends that these opinions were without proper foundation or based upon facts not in evidence.
Dr. Baccus was admitted as an expert witness in the field of psychology with no objection by appellant. He was qualified by virtue of his training, knowledge, skill, and expertise to render an expert opinion on psychological issues. He testified that he used accepted testing methodology in administering certain tests to and performing a psychological evaluation of appellant. Appellant's arguments concerning his testimony go to weight rather than admissibility. As such, we find no abuse of discretion in the admission of the psychological report or the expert testimony. The sixth assignment of error is not well-taken and is overruled.
Based on the foregoing, we overrule appellant's six assignments of error. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
 ____________________ LAZARUS, J.
BOWMAN and KENNEDY, JJ., concur.